**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 11-cv-01644-CMA-BNB

U.S. COMMODITY FUTURES TRADING COMMISSION,

      Plaintiff,

v.

FLINT McCLUNG CAPITAL LLC, and
SHAWON McCLUNG,

      Defendants.

_____

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND**
**ORDER OF FINAL DEFAULT JUDGMENT, PERMANENT INJUNCTION,**
**CIVIL PENALTIES AND OTHER EQUITABLE RELIEF AGAINST**
**DEFENDANTS FLINT-McCLUNG CAPITAL LLC AND SHAWON McCLUNG**

_____

      This matter is before the Court on Plaintiff U.S. Commodity Futures Trading

Commission's ("CFTC" or "Commission") Motion for Default Judgment, Permanent

Injunction, Civil Penalties and Other Equitable Relief against Defendants Flint-McClung

Capital, LLC and Shawon McClung.  For the reasons stated below and good cause

appearing, the Motion for Default Judgment is granted and judgment is entered against

Defendants Flint-McClung Capital LLC and Shawon McClung.

## I.  SUMMARY

      On June 23, 2011, the CFTC filed a Complaint and accompanying papers,

including a Motion to Show Cause Regarding a Statutory Restraining Order, alleging

that Defendants Flint-McClung Capital LLC ("FMC") and Shawon McClung ("McClung")

had fraudulently solicited and misappropriated customer funds under the guise of

trading off-exchange leveraged or margined foreign currency contracts ("forex" or

"foreign currency") through a pooled investment operated or managed by Defendants.

Between March 2010 and February 2011, more than $2.4 million was deposited by third

parties into FMC bank accounts.  Docket Entry ("D.E.") 1-5.  The Commission charged

FMC and McClung with fraud in violation of Section 4b(a)(2)(A) and (C) of the Act, to be

codified at 7 U.S.C. § 6b(a)(2)(A) and (C) and Commission Regulation 5.2(b)(1) and (3),

17 C.F.R. § 5.2(b)(1) and (3) and failure to register, as required, as a Commodity Pool

Operator ("CPO") and Associated Person ("AP"), respectively, in violation of Section

2(c)(2)(C)(iii)(I)(cc) of the Act, to be codified at 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), and

Commission Regulation 5.3(a)(2)(i) and (ii), to be codified at 17 C.F.R. §§ 5.3(a)(2)(i)

and (ii).  Docket D.E. 1.

 FMC and McClung were properly served with Summons and complaint pursuant

to Fed. R. Civ. P. 4(h) *via* personal service upon their registered agent and attorney.

D.E. 34.

 On June 23, 2010, the Court entered the Statutory Restraining Order.  D.E. 8.

On July 7, 2011, the Court entered a Consent Order of Preliminary Injunction and for

other Equitable Relief Against the Defendants. D.E. 19.  Defendant McClung filed a

Motion for an Extension of Time to File Answer or Otherwise Respond on August 29,

2011, which was granted on September 6, 2011, giving Defendant McClung until

September 9, 2011 to answer the CFTC's Complaint.  D.E. 21, 23.   At no time did Defendant FMC move for an extension of time to answer the CFTC's Complaint.

Both FMC and McClung failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1), as well as the deadline of September 9, 2011, extended by the Court.  Accordingly, the Commission filed motions for entry of a clerk's default against Defendants FMC and McClung.  D.E. 35, 36.  The Clerk of this Court entered a default against FMC and McClung on October 7, 2011.  D.E. 39.

The Court entered an Order to Show Cause on November 10, 2011, directing Plaintiff CFTC to file Motions for Default Judgment no later than November 17, 2011. D.E. 41. On November 14, 2011, the CFTC filed a Motion for Extension of Time to file Motion for Default Judgment, which was granted by the Court. D.E. 42, 43.

## II. <u>FINDINGS OF FACT</u>

### A.    THE PARTIES

Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

Defendant Shawon McClung is an individual who previously resided in Denver, C.O.  McClung holds himself out as the CFO and co-owner of FMC.  McClung has

never been registered with the CFTC.  McClung is not a financial institution, registered

broker dealer, insurance company, financial holding company, or investment banking

holding company, and is not an AP of such entities.

Defendant Flint-McClung Capital LLC is an Indiana corporation with a principal

place of business in Englewood, Colorado.  FMC has never been registered with the

CFTC.  FMC is not a financial institution, registered broker dealer, insurance company,

financial holding company, or investment banking company, and is not an AP of such

entities.

**B.**   **DEFENDANTS  FRAUDULENT SOLICITATION OF POOL PARTICIPANTS TO TRADE FOREX**

Beginning in or around at least March 2010, Defendants began soliciting

customer funds for the purported purpose of trading leveraged or margined forex

through a pooled investment fund operated and managed by FMC, through McClung.

Defendants, soliciting directly, and through at least two other persons, received at least

$2,422,475 from at least 20 individuals for the purpose of investing in FMC.  At least

certain of FMC and McClung's pool participants, if not the majority, were individuals who

were non-ECPs, meaning each had total assets of less than $5 million.

Defendants solicited prospective pool participants through a website www.flint-

mcclung.com ("FMC website"), and oral and written solicitations. FMC and McClung

also used at least two other individuals to solicit prospective pool participants in the

name of FMC.  At no time, has either FMC or McClung been registered in any capacity with the CFTC or a member of the National Futures Association.

In oral and written solicitations, FMC, through McClung and others, and McClung represented to prospective pool participants that Defendants would trade foreign currency on their behalf using an automated trading system purportedly developed by an FMC partner.  McClung described himself as the co-owner, founder, and CFO of FMC and otherwise acted as the primary FMC representative.  The majority of FMC pool participants spoke only with McClung, or the two known FMC promoters.

Through the FMC website, investment documents, oral solicitations, and emails, FMC, through McClung and others, and McClung made false promises of huge returns, guaranteed pool participants that investments were protected from loss, boasted that the FMC trading program had an extraordinarily high percentage of winning trades, and minimized the significant risks of trading leveraged foreign currency.

In oral solicitations, McClung and FMC promoters falsely represented that FMC had approximately $300 million in pool participant funds pooled, which were segregated and in reserve, and used approximately $500 million in FMC proprietary funds to trade forex.  At least one pool participant was told by an FMC promoter that FMC had an NBA basketball player as a pool participant who had invested $25 million. McClung told at least one pool participant that starting in January 2011, he would be able to log onto the FMC website online and see real time balances and trade activity (delayed 20 minutes or so) for pool participant accounts.  However, this pool participant was unable to view

the promised trading activity.  *Id.*  In the Defendants' written solicitation materials, they made a number of false representations as well.  For example, in at least one FMC investment document executed by McClung, Defendants falsely claimed that FMC had a cash reserve of almost one hundred million dollars ($100,000,000).

Based upon the solicitations that simultaneously guaranteed investments from loss and promised huge returns over short periods of time, a number of potential customers invested in the FMC pool becoming participants.  Pool participants executed purported Joint Venture agreements with FMC.  McClung executed many of the agreements as the stated manager or principal of FMC.  In at least one FMC Joint Venture agreement executed by McClung, Defendants represented that all the pool participant funds would be "applied to a trading account."  A number of FMC Joint Venture agreements stated that if pool participants' funds ceased to be traded, they would be returned to the pool participant within 5 days.  *Id.*  The FMC Joint Venture agreements often contained payment schedules attached to them, which promised different payments depending on the structure of the investment.  *Id.*  Several pool participants initially entered short term, 30 day, investments for which they were promised 50% returns.  Other pool participants were encouraged to invest for periods of 6 months to a year for which they were promised 15% monthly returns as set out in the attached payout schedule.

FMC, through McClung and others, and McClung induced pool participants to enter into an initial short-term investment with FMC, often for a term of 30 days.

6

On more than one occasion, Defendants would pay out the promised return and initial principal to the pool participants, but encourage the pool participant to invest a larger amount of money in a subsequent investment.  In reliance on the Defendants' purported profitable trading and the returns they experienced in their initial investment based on the purported profitable trading, at least several pool participants invested additional funds with FMC and McClung after receiving returns and principal from an initial investment.

FMC pool participants understood, based upon conversations with promoters, McClung, and FMC documents, that the promised returns were purportedly based on Defendants using the pool participant funds to profitably trade forex on their behalf. In their solicitations and throughout the scheme, directly and through others, Defendants FMC and McClung failed to disclose that they were operating a Ponzi scheme, misappropriating funds, and not engaging in trading on behalf of pool participants.

**C.   DEFENDANTS ENGAGED IN LITTLE, IF ANY, TRADING ON BEHALF OF POOL PARTICIPANTS**

Since at least March 2009 through the present, there were at least five bank accounts in the name of FMC for which McClung was a signatory.  At all relevant times, McClung was, and continues to be, the sole signatory on the FMC bank account into which customer funds were deposited.  Defendant McClung, himself and through others,

7

instructed FMC pool participants to wire their investment funds directly to the FMC bank accounts, and pool participants did so.

At least $2,422,475 from 20 customers was deposited into bank accounts in the name of FMC.  At no time did the FMC bank accounts hold $25 million, $100 million, $300 million or $500 million as McClung or other FMC agents claimed to pool participants and other potential customers.

From the FMC bank accounts, it does not appear that any funds were used for purposes of trading forex or for any investment purpose.  Defendants never opened a trading account in the name of FMC, McClung, or pool participants, at any domestic futures commission merchant.

## D.   DEFENDANTS MISAPPROPRIATED POOL PARTICIPANT FUNDS

Since at least December 2010, Defendants, through McClung, misappropriated funds by using at least $957,125 of pool participant funds to make payments of purported profits or to return principal to FMC pool participants.  Defendant McClung also misappropriated funds for his personal use; McClung made personal withdrawals and paid personal expenses for the apparent benefit of him and his family.  For example, from the FMC bank accounts that accepted pool participant funds, McClung made approximately $286,000 in ATM withdrawals and debit card purchases.  McClung also used approximately $70,000 for the purchase of automobiles, and separately made approximately $23,000 in withdrawals from these accounts.  In summary, FMC and

McClung have misappropriated at least $1,701,250 for personal expenses and payments to other customers and unrelated individuals.

As of March 31, 2011, the combined account balance of FMC bank accounts was $2,664.06. Currently, the sum of $1,387.25 is frozen in Defendants known bank accounts.

## E.   DEFENDANTS CONCEALED FRAUD WITH FALSE CLAIMS

Defendants, through McClung, concealed the Ponzi scheme, misappropriation, and ongoing fraud through written and oral communications that falsely represented that FMC has actually and profitably traded foreign currency on behalf of pool participants. Starting in at least January 2011, certain FMC pool participants requested that the Defendants return their funds, but their demands for funds to be returned have not been met. McClung personally communicated with at least one FMC pool participant to reassure him that his funds would be returned within a number of days after the deadline passed for the pool participant's promised payout.  Despite his promises of imminent payment, this pool participant was not paid either his remaining return or his guaranteed initial principal investment.  After this initial communication in February 2011, McClung did not respond to any further inquiries regarding the return of this pool participant's principal and return.

Defendants employed a variety of false excuses for not returning pool participant funds.  McClung falsely claimed in an email to one customer that he was moving bank accounts from FMC's current bank due to that bank's involvement with the Madoff Ponzi

scheme.  On separate occasions, FMC, through McClung, and McClung sent letters to at least two pool participants claiming that FMC was reorganizing and that all pool participant funds would be paid out at the end of those months in which the letters were sent, January and March 2011, respectively.  FMC, through McClung, and McClung also claimed that a civil lawsuit brought by one of the investors was delaying repayment of pool participant funds.

Repeatedly, FMC, through McClung, and McClung represented to various pool participants that their funds would be repaid at certain set dates from February 2011 through the present.  As recently April 15, 2010, FMC, through McClung, and McClung represented to various pool participants that they would be repaid in full on May 16, 2011, but the promised payments did not materialize.

### III. CONCLUSIONS OF LAW

### A.   DEFENDANTS' FAILURE TO ANSWER WARRANTS ENTRY OF DEFAULT JUDGMENT

When a party against whom a default judgment is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.  Fed. R. Civ. P. 55(a).  The clerk of court's entry of default provides notice to the defaulting party prior to the entry of default judgment by the court.  *Williams v. Smithson*, 57 F.3d 1081 (Table), 1995 WL 365988 (10th Cir. June 20, 1995).  The party seeking the default must then apply to the court for a default judgment.  *Id.* at *1; Fed. R. Civ. P. 55(b).

Entry of default judgment is left to the sound discretion of the trial court. *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, (10th Cir. 1987); see also *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (granting default judgment for permanent injunction, disgorgement and civil monetary penalty where defendant failed to answer complaint alleging securities fraud and misappropriation).  Although "default judgments are not favored by courts," the trial court is given a great deal of latitude in exercising its discretion, and accordingly "considerable deference is given the trial judge's determination regarding the default judgment."  *Katzson Bros., Inc. v. U.S. E.P.A.*, 839 F.2d 1396, 1399 (10th Cir. 1988); *Nikwei*, 822 F.2d at 941.

Upon default, the well-pled allegations in the complaint are to be taken as true for purposes of establishing liability.  *Lawbaugh*, 359 F. Supp. 2d at 422; *see also Holland v. New Country Mining*, No. 01:06-0626, 2006 U.S. Dist. LEXIS 88372, at *6 (S.D. W.Va. Dec. 6, 2006) (where defendant has not pled or otherwise defended himself in an action, all averments in the complaint are deemed admitted); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (defaulting defendant admits plaintiff's well-pled allegations of fact).

Defendants have not responded to the Complaint, have not attempted to dispute or defend against the allegations in the Complaint.  *See generally* Docket.  In light of the facts established above, the Court finds that entry of final judgment against Defendants is warranted as a matter of law.

1.   Defendants Violated Section 4b(a)(2)(A) and(C) of the Act,
       as Amended by the CRA

Section 4b(a)(2)(A) and (C) of the Act, as amended by the CRA, makes it

unlawful:

> for any person, in or in connection with any order to make, or the making
> of, any contract of sale of any commodity for future delivery, or other
> agreement, contract, or transaction subject to paragraphs (1) and (2) of
> section 5a(g), that is made, or to be made, for or on behalf of, or with, any
> other person, other than on or subject to the rules of a designated contract
> market – (A) to cheat or defraud or attempt to cheat or defraud the other
> person; [or] (C) willfully to deceive or attempt to deceive the other person
> by any means whatsoever in regard to any order or contract or the
> disposition or execution of any order or contract, or in regard to any act of
> agency performed, with respect to any order or contract for or, in the case
> of paragraph (2), with the other person.

As shown below, Defendants, through their misrepresentations and omissions of

material fact violated Section 4b(a)(2)(A) and (C) of the Act, as amended by the CRA.

a)   *Fraud by Misrepresentations and Omissions*

To establish that Defendants violated Sections 4b(a)(2)(A) and (C) of the Act, as

amended by the CRA, the Commission must prove that (1) a misrepresentation,

misleading statement, or deceptive omission was made; (2) with scienter; and (3) that

the misrepresentation, misleading statement, or deceptive omission was material.

*CFTC v. R.J. Fitzgerald & Co.*, 310 F. 3d 1321, 1328 (11th Cir. 2002).  As shown below,

Defendants, through their misrepresentations and omissions of material fact, violated

Sections 4b(a)(2)(A) and (C) of the Act, as amended by the CRA.

(i)     _Defendants Made Misrepresentations and Omissions_

Defendants, through McClung and others, knowingly misrepresented to pool participants that, among other things, their investment principal was guaranteed from loss.  Defendants, through McClung and others, also minimized the risk of forex trading and told pool participants that FMC had hundreds of millions of dollars of assets under management and also had a large reserve of hundreds of millions of dollars of proprietary funds with which FMC traded forex.  Defendants, through McClung, also omitted to tell pool participants that they were operating a Ponzi scheme and that, in fact, none of the pool participants funds were being traded in forex or any other investment portfolio.

(ii)     _Defendants Acted with Scienter_

Under the Act, scienter requires "highly unreasonable omissions or misrepresentations . . . that present a danger of misleading [customers] which is either known to the Defendant[s] or so obvious that Defendant[s] must have been aware of it." _R.J. Fitzgerald & Co._, 310 F. 3d at 1328 (quoting _Ziemba v, Cascade International, Inc._, 256 F.3d 1194, 1202 (11th Cir. 2001)); _Wasnick v. Refco, Inc._, 911 F.2d. 345, 348 (9th Cir. 1990) (citation omitted) (scienter is established when an individual's acts are performed "with knowledge of their nature and character"); _Hill v. Bache Halsey Stuart Shields Inc._, 790 F.2d 817, 822-23 (10th Cir. 1986) (district court erred in instruction; scienter requires degree of intent beyond carelessness or negligence).

13

Defendants, through McClung, made misrepresentations and omissions to FMC's pool participants with the requisite scienter.  McClung was responsible for soliciting customers (along with at least two promoters) and handling the pool participant funds; McClung personally misappropriated pool participant funds.  When Defendants made misrepresentations about trading success, the status of pool participants' accounts, and failed to trade pool participants' funds, Defendants knew such representations were false or acted with reckless disregard of the truth in making those misrepresentations.  Accordingly, the Defendants acted with the requisite scienter.

(iii)   *Defendant's Misrepresentations and Omissions Were Material*

A statement is material if "there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest."  *R&W Technical Serv. Ltd. v. Commission*, 205 F.3d 165, 169 (5th Cir. 2000); s*ee R.J. Fitzgerald*, 310 F.3d at 1328-29; *Wall Street Underground, Inc.*, 281 F. Supp. 2d at 1269.  Any fact that enables customers to assess independently the risk inherent in their investment and the likelihood of profit is a material fact.  *In re Commodities Int'l Corp.,* [1996-1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) & 26,943 at 44,563-64 (CFTC Jan. 14, 1997); *see also Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 110 (2d Cir. 1986) ("'material misrepresentations about the nature of the organization handling [an] account, the people [dealt] with, and the type of trading [the] funds were used for' would

14

be sufficient to state a cause of action pursuant to the [Act].") (quoting *Psimenos v. E.F. Hutton & Co. Inc.*, 772 F.2d 1041, 1043 & n.5 (2d Cir. 1983)); *Hirk v. Agri-Research Counsel Inc.*, 561 F.2d 96, 103-04 (7th Cir. 1977) (defendants violated Section 4b of the Act by making misrepresentations about the profitability of their commodity trading when soliciting customers); *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 447 (D.N.J. 2000) (defendant violated Section 4b where he represented he would open a trading account and then did not do so and misrepresented account balances, profit potential and material risk); *CFTC v. Commonwealth Fin. Group, Inc.*, 874 F. Supp. 1345, 1353-54 (S.D. Fla. 1994) (misrepresentations concerning trading record and experience of a firm or broker are fraudulent because past success and experience are material factors to reasonable customers).

As demonstrated above, Defendants' misrepresentations and omissions are material in that a reasonable customer would want to know, among other things, that Defendants were not trading forex as promised and that pool participant funds were being misappropriated by the Defendants.

<em>b)   Fraud by Misappropriation</em>

Defendants also violated Section 4b(a)(2)(A) and (C) of the Act and Regulation 5.2(b)(1) and (3), by misappropriating at least $1,701,250 of the funds solicited and accepted from pool participants for the purpose of forex trading.  Misappropriation of participant funds constitutes "willful and blatant" fraud in violation of Section 4b(a) of the Act.  *CFTC v. Noble Wealth*, 90 F. Supp. 2d 676, 687 (D. Md. 2000) (defendants

15

violated Section 4b(a)(2)(i) and (iii) (the predecessor to 4b(a)(2)(A) and (C)) by diverting

investor funds for operating expenses and personal use); *CFTC v. Skorupskas*, 605

F. Supp. 923, 932 (E.D. Mich. 1985) (defendant violated Section 4b when she

misappropriated pool participant funds by soliciting funds for trading and then trading

only a small percentage of those funds, while disbursing the rest to investors, herself,

and her family).

        c)     *Registration Violations*

       The courts have consistently recognized that the operation of an unregistered

entity is a serious violation of the Act and a threat to the integrity of the industry.  Thus,

failure to register with the Commission is a serious offense, and not a mere technical

violation of the Act.  *See Commission v. British American Commodity Options Corp.*,

560 F.2d 135, 139-140 (2d Cir. 1977); *see also CFTC v. Heritage Capital Advisory*

*Services., Ltd.*, [1982-1984 Transfer binder] Comm. Fut. L. Rep. (CCH) ¶ 21,627 at

26,387 (N.D. Ill. Nov. 8, 1982).

        (i)     <u>*Defendants Violated Section 2(c)(2)(C)(iii)(I)(cc) of the Act*</u>

       Section 2(c)(2)(C)(iii)(I)(cc) of the Act, as amended by the CRA, states that:

> A person, unless registered in such capacity as the Commission by rule,
> regulation, or order... shall not— (cc) operate or solicit funds, securities, or
> property for any pooled investment vehicle that is not an eligible contract
> participant in connection with agreements, contracts, or transactions
> described in clause (i) of this subparagraph entered into with or to be
> entered into with a person who is not described in item (aa), (bb), (dd),
> (ee), or (ff) of subparagraph (B)(i)(II).[1]

---

[1] This includes financial institutions, brokers and dealers registered under the Securities
Exchange Act and associated persons thereof, insurance companies and regulated subsidiaries
or affiliates thereof, financial holding companies, and investment bank holding companies.

Put simply, an individual, unless he fits into certain limited designations not applicable here must be registered if he wants to solicit or accept orders for a pooled investment from a non-ECP in connection with forex transactions.  The Defendants solicited individuals to participate in a pooled investment vehicle which would engage in retail forex transactions.[2]  The pool was not an eligible contract participant.  Section 1a(12) (iv) of the Act, as amended by the CRA.  None of the counterparties to the Defendants' transactions were persons described in Sections "(aa), (bb), (dd), (ee), or (ff) of subparagraph (B)(i)(II)".  This includes financial institutions, brokers and dealers registered under the Securities Exchange Act and associated persons thereof, insurance companies and regulated subsidiaries or affiliates thereof, financial holding companies, and investment bank holding companies.  Because the Defendants was not registered in an appropriate capacity, as either a CPO or AP, when they solicited customers, they violated Section 2(c)(2)(C)(iii)(I)(cc) of the Act, as amended by the CRA.

(ii)     *Defendant Violated Regulation 5.3(a)(2)(i)*

Regulation 5.1(d)(1), to be codified at 17 C.F.R. § 5.1(d)(1), defines a CPO as any person who operates or solicits funds, securities or property for a pooled investment vehicle that is not an ECP as defined in Section 1a of the Act, in connection with retail

---

[2] Section 5.1(m), to be codified at 17 C.F.R. § 5.1(m), defines retail forex transactions as any account, agreement, contract or transaction described in section 2(c)(2)(B) or 2(c)(2)(C) of the Act.

forex transactions. Regulation 5.3(a)(2)(i) requires any CPO, as defined in Regulation 5.1(d)(1), to register as a CPO.  FMC acted as a CPO without registering. Specifically, FMC solicited and accepted funds from at least 10 individuals who are not ECPs to invest with FMC for the purpose of trading forex on their behalf in a pooled account.

(iii)      <u>Defendants Violated Regulation 5.3(a)(2)(ii)</u>

Regulation 5.1(d)(1)(2), to be codified at 17 C.F.R. § 5.1(d)(1)(2), defines an AP as any natural person associated with a commodity pool operator as a partner, officer, employee, consultant or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves:  (i) The solicitation of funds, securities, or property for a participation in a pooled investment vehicle; or (ii) The supervision of any person or persons so engaged.  Regulation 5.3(a)(2) (iii) requires any associated person of a commodity pool operator, as defined in § 5.1(d)(2) of this part, is required to register as an associated person of a commodity pool operator.  McClung acted as an AP of FMC without registering. Specifically, McClung solicited funds from at least 10 individuals who are not ECPs to invest with FMC for the purpose of trading forex on their behalf in a pooled account.

d)      <i>McClung is Liable for the Violations of FMC Pursuant to Section<br>13(b) of the Act</i>

McClung is liable for FMC's violations of the Act and Regulations, pursuant to Section 13(b) of the Act, because he is a controlling person of FMC and knowingly induced the violations of FMC or failed to act in good faith.  When a person who

18

possesses, directly or indirectly, the power to direct or cause the direction of an entity's

management and policies either knowingly induces, directly or indirectly, the entity's

violative acts or fails to act in good faith, he is liable as a controlling person of the entity

under Section 13(b) of the Act. *See Monieson v. CFTC*, 996 F.2d 852, 858 (7th Cir.

1993); *Wall Street Underground, Inc.*, 281 F. Supp. 2d at 1272; *In re Apache Trading

Corp.*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,251 at 34,766

(CFTC March 11, 1992).  To establish that McClung was a "controlling person" with

respect to FMC, the Commission must show that McClung had the ability to control

FMC.  *See Wall Street Underground, Inc.,* 281 F. Supp. 2d at 1272 ("A person has

the requisite degree of control to be a controlling person when he or she has "the

possession, direct or indirect, of the power to direct or cause the direction of the

management and policies of a person whether through the ownership of voting

securities, by contract, or otherwise . . . It is the power to control that matters, not

whether the power is exercised by actually participating in or benefitting from the illegal

acts.") (citations omitted).  Knowing inducement requires a showing that "the controlling

person had actual or constructive knowledge of the core activities that constitute the

violations at issue and allowed them to continue." *JCC, Inc. v. CFTC*, 63 F.3d 1557,

1568 (11th Cir. 1995); *CFTC v. Wilshire Inv. Mgmt. Corp.*, 407 F. Supp. 2d 1304, 1312

(S.D. Fla. 2005), *aff'd in part; vacated and remanded in part*, 531 F.3d 1339 (11th Cir.

2008).  A controlling person fails to act in good faith if he does not maintain a

reasonably adequate system of internal supervision and control over the controlled

19

persons or does not enforce with any reasonable diligence such a system.  *See In re Apache Trading Corp.*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,251 at 38,794 (CFTC Mar. 11, 1992).

The evidence set forth above establishes that McClung was a controlling person with respect to FMC, and that he knowingly induced the violations of FMC, simultaneously demonstrating a lack of good faith.  During the relevant period McClung directly or indirectly controlled FMC as its CFO.  He had virtually complete authority over, and day-to-day control of, FMC and did not report to anyone; any failure of supervision was in fact a failure to supervise his own actions.  McClung was the sole signatory on FMC bank accounts that accepted pool participant funds.  Furthermore, as discussed above, McClung did not act in good faith or knowingly induced, directly or indirectly, FMC's conduct alleged in the proposed Complaint.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), McClung is liable for FMC's violations of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

e)     *FMC is Liable for the Acts of Its Agent McClung Pursuant to Section 2(a)(1)(B) of the Act*

FMC is liable as a principal for the acts of its agent McClung and others.  Under Section 2(a)(1)(B) of the Act, "[t]he act, omission or failure of any official, agent or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission or failure of such

20

individual, association, partnership, corporation, or trust, as well as of such official agent

or other person." 7 U.S.C. § 2(a)(1)(B). The facts set forth above demonstrate that

during the relevant period, McClung acted as an agent of FMC. Moreover, the acts,

misrepresentations, omissions, and failures of McClung and others described above

occurred within the scope of his employment, office or agency with FMC. Therefore,

FMC is liable for these acts, misrepresentations, omissions, and failures pursuant to

Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

## IV. ORDER

It is hereby ORDERED that:

1.      The Commission's Motion for Default Judgment, Permanent Injunction,

        Civil Penalties and Other Equitable Relief is GRANTED;

### PERMANENT INJUNCTION

2.      IT IS FURTHER ORDERED that Defendants Flint-McClung Capital LLC

        and Shawon McClung are permanently restrained, enjoined and prohibited

        from:

        A.      further violations of Section, 2(c)(2)(C)(iii)(I)(cc), 4b(a)(2)(A) and (C)
                of the Act, as amended by the Dodd-Frank Wall Street Reform and
                Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No.
                111-203, Title VII (the Wall Street Transparency and Accountability
                Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010),
                to be codified at 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6b(a)(2)(A) and
                (C); Regulation 5.2(b)(1) and (3), 5.3(a)(2)(i) and (ii), to be codified
                at 17 C.F.R. § 5.2(b)(1) and (3), § 5.3(a)(2)(i) and (ii);

        B.      trading on or subject to the rules of any registered entity, as that
                term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a,

for their own accounts, for any account in which they, separately or together, have a direct interest or indirect interest, or for any other account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

C.    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh)   (2011))  ("commodity options"), security futures products,  and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they, separately or together, have a direct or indirect interest;

D.    having any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on their behalf, either separately or together;

E.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

F.    soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

G.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and/or

H.    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, officer or employee of any person registered, required to be registered, or exempted from registration or with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

RESTITUTION

3.    IT IS FURTHER ORDERED that Defendants Flint-McClung Capital LLC

and Shawon McClung shall pay jointly and severally restitution in the

amount of $1,701,250, plus post-judgment interest (the "Restitution

Obligation").  Post-judgment interest on the Restitution Obligation shall

accrue commencing on the date of the entry of this Order and shall be

determined using the Treasury Bill rate prevailing on the date of the entry

of this Order pursuant to 28 U.S.C. § 1961;

CIVIL MONETARY PENALTY

4.    IT IS FURTHER ORDERED that Defendants Flint-McClung Capital LLC

and Shawon McClung shall pay jointly and severally a civil monetary

penalty in the amount of $4,300,000, plus post-judgment interest ("CMP

Obligation").  Post-judgment interest on the CMP Obligation shall accrue

commencing on the date of the entry of this Order and shall be determined

using the Treasury Bill rate prevailing on the date of the entry of this Order

pursuant to 28 U.S.C. § 1961;

5.    Defendants Flint-McClung Capital LLC and Shawon McClung shall pay

jointly and severally their CMP Obligation by electronic funds transfer, or

U.S. postal money order, certified check, bank cashier's check, or bank

money order.  If payment is to be made by other than electronic funds

23

transfer, Defendants shall make payment payable to the Commodity

Futures Trading Commission and deliver it the following address:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables – AMZ 340
> E-mail Box:  9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169
> Telephone:  (405) 954-5644;

6.     If payment is to be made by electronic funds transfer, Defendants Flint-

McClung Capital LLC and Shawon McClung shall contact Linda Zurhorst

or her successor at the above address to receive payment instructions and

shall comply fully with those instructions.  Defendants shall accompany the

payment of the penalty with a cover letter that identifies the paying

Defendant and the name and docket number of the proceeding.

Defendants shall simultaneously transmit copies of the cover letter and the

form of payment to: (a) Director, Division of Enforcement, Commodity

Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C.

20581; and (b) Chief, Office of Cooperative Enforcement, at the same

address;

<u>APPOINTMENT OF MONITOR AND
MATTERS RELATED TO PAYMENTS OF RESTITUTION,
AND CIVIL MONETARY PENALTIES</u>

7.      IT IS FURTHER ORDERED that the National Futures Association ("NFA")

is appointed as Monitor to effect payment by Defendants and the

distribution of restitution.  The Monitor shall collect restitution payments

from Defendants and make distributions to Defendants' customers.

Because the Monitor is acting as an officer of this Court in performing

these services, it shall not be liable for any action or inaction arising from

its appointment as Monitor, other than actions involving fraud.

8.      Defendants shall make required restitution payments under this Order in

the name of the "Flint-McClung Capital/Shawon McClung Fund" and shall

send such payments by electronic funds transfer, or U.S. postal money

order, certified check, bank cashier's check, or bank money order to the

Office of Administration, National Futures Association, 300 South Riverside

Plaza, Suite 1800, Chicago, Illinois 60606, under a cover letter that

identifies the paying Defendant and the name and docket number of the

proceeding.  The paying Defendant shall simultaneously transmit copies

of the cover letter and the form of payment to: (a) Director, Division of

Enforcement, Commodity Futures Trading Commission, 1155 21st Street,

N.W., Washington, D.C. 20581; and (b) Chief, Office of Cooperative

Enforcement, at the same address.

9.      The Monitor shall oversee Defendants' Restitution Obligation, and shall
have the discretion to determine the manner of distribution of funds in an
equitable fashion to customers or may defer distribution until such time as
it may deem appropriate.  In the event the amount of restitution payments
to the Monitor are of a *de minimus* nature such that the Monitor determines
that the cost of making a distribution to customers is impractical, the
Monitor may, in its discretion, treat such restitution payments as civil
monetary penalty payments, which the Monitor shall forward to the
Commission following the instructions for civil monetary penalties as set
forth in paragraphs 4, 5, and 6 of this Order;

10.     The Commission shall provide the Monitor with a list identifying
Defendants' customers.  This provision shall not limit the ability of any
individual from petitioning the Court to be included as a customer of
Defendants or to establish that a greater restitution amount is owed from
Defendants or any other person or entity.  Further, nothing herein shall be
construed in any way to limit or abridge the rights of any customer that
exist under state or common law;

11.     Defendants shall execute any documents necessary to release funds that
he has in any repository, bank, investment or other financial institution
wherever located, in order to make partial or total payment toward their
Restitution Obligations;

12.     To the extent that funds accrue to the U.S. Treasury for satisfaction of the

Restitution Obligation, such funds shall be transferred to the Monitor for

disbursement in accordance with the procedures set forth in paragraphs 8,

and 9 of this Order;

13.     Any acceptance by the Commission or the Monitor of partial payment or

Defendants' of Restitution Obligation and/or CMP Obligation shall not be

deemed a waiver of Defendants' obligations to make further payments

pursuant to this Order, or a waiver of the Commission's right to seek to

compel payment of any remaining balance;

MISCELLANEOUS PROVISIONS

IT IS FURTHER ORDERED that:

14.     Prohibition on Transfer of Funds:  Defendants shall not transfer or cause

others to transfer funds or other property to the custody, possession or

control of any other person or entity for the purpose of concealing such

funds or property from the Court, the Plaintiff or any officer that may be

appointed by the Court;

15.     Notices:  All notices required to be given by any provision in this Order

shall be sent by certified mail, return receipt requested, as follows:

Notice to Commission:

                Director
                Division of Enforcement
                Commodity Futures Trading Commission
                1155 21st Street, NW
                Washington, D.C. 20581

All such notices to the Commission shall reference the name and docket number of this proceeding;

16.    <u>Invalidation</u>:  If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding;

17.    <u>Continuing Jurisdiction of this Court</u>: This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

DATED at Denver, Colorado, this   28th   day of February, 2012.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge